UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:13-CV-00030-TBR

ARTHUR BASKIN                                                                                                    Plaintiff,

v.

PEPSI MIDAMERICA CO.                                                                                       Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon several pretrial motions filed in anticipation of the jury trial to begin on Monday, February 9, 2015. The Court has considered the objections raised in the teleconference of Tuesday, February 4, 2015, and discussed in the parties' written briefs. For the reasons set forth below, the Court will overrule Plaintiff Arthur Baskin's objections to the exhibit list of Defendant Pepsi MidAmerica Co. ("Pepsi"). (Docket No. 51.) The Court will sustain Baskin's objection to Pepsi's designation of deposition testimony for use at trial. (Docket No. 50.)

**I.      The Court will overrule each of Baskin's objections to Pepsi's exhibit list.**

Baskin objects to several exhibits that Pepsi seeks to introduce at trial. The Court will address each in turn.

**a.   Memorandum and disciplinary form regarding missing cash from Baskin's truck**

Baskin first points to Pepsi's Exhibits 11 and a18, a memorandum and disciplinary form dated October 29, 2010, memorializing the loss of $1,454.70 from the Pepsi vehicle that Baskin drove. Baskin argues that these materials are irrelevant, as this incident did not contribute to Pepsi's decision to terminate his employment.

The Court cannot agree. John Rains, Pepsi's general manager and executive vice president of operations, opted to terminate Baskin's employment only after reviewing his personnel file. Baskin's file

presumably reflected not only the June 5, 2012, incident, but also Baskin's previous disciplinary issues and reprimands. Therefore, the Court cannot say that these documents had no bearing on Rains' decision. (*See* Docket No. 25-3, Affidavit of John Rains, at ¶ 8: "Based upon this information, and because of his totally unacceptable insubordination and his extraordinary misconduct being harmful to the company, I determined that Mr. Baskin should be terminated.") Because the incident described in Exhibits 11 and 18 contributed to Rains' impression of Baskin's performance, the Court finds that their relevance outweighs any resultant prejudice and will admit them. However, Pepsi must first establish a proper foundation that Rains considered this information.

### b. Disciplinary form regarding Baskin's alleged "rude behavior"

Baskin next objects to the admission of Exhibit 14, a memorandum suggesting inappropriate "verbal conduct" during a conversation with the management of West Kentucky Community and Technical College. Baskin argues that the document lacks a proper foundation, as it fails to identify any details of the conduct referenced, the author of the report, or any subsequent investigation. The deficiencies that Baskin perceives may prove ample ground for cross-examination; however, they do not serve as a basis for exclusion. As discussed above, Rains reviewed Baskin's personnel file before determining that he should be terminated. This report likely appeared in the file. Should Pepsi establish by proper foundation that Rains considered this information in evaluating Baskin's performance, the Court will not exclude its admission.

### c. Disciplinary forms and statements regarding Ashley Williams' conduct

Pepsi's Exhibits 29 through 37 consist of various disciplinary forms and written statements regarding the performance of Ashley Williams, a former Pepsi employee who will testify on Baskin's behalf. Among these documents is a form dated January 17, 2014, regarding Williams' termination from employment with Pepsi. Baskin contends that because these events allegedly occurred over a year after Baskin himself was terminated, they should be excluded as irrelevant.

Disallowing such evidence, though, would prohibit Pepsi from exposing Williams' potential bias against her former employer. The Court must afford Pepsi reasonable latitude to cross-examine Williams about the alleged partiality of her testimony. Because the documents at issue arguably reflect a deteriorating relationship between Williams and her former employer, they are relevant to witness bias and will be admissible.

### d. Shortages reports and bank deposit slips

Baskin next objects to Pepsi's Exhibits 40 and 42, both of which are "Full Line Sales Shortages Reports" that purport to identify a shortage between the number of products sold and the amount of cash collected. Baskin anticipates that Pepsi will use these reports to suggest that he did not fulfill his responsibilities, either innocently or by stealing company money. Baskin also objects to Pepsi's Exhibit 43—images of deposit slips showing Baskin's deposits of funds collected on his route. Baskin again predicts that Pepsi will use the deposit slips to show that he did not adequately perform his job tasks. He argues that because Pepsi did not discipline, investigate, or terminate him for cash shortage issues, these exhibits should not be admitted.

However, the Court finds that these documents are relevant, particularly in light of Baskin's allegations that African-American employees were targeted for questioning about cash shortage issues. Pepsi does not deny that management questioned Baskin about these shortages. The company insists, however, that the reports at issue will show that Baskin was singled out not because of his race, but because of his performance. Accordingly, these documents are both relevant and admissible, provided that Pepsi establishes a proper foundation.

### e. Documents allegedly concerning wage claims

In a previous Memorandum Opinion, this Court determined that evidence of a February 2012 Kentucky Labor Cabinet wage dispute between the parties would not be admitted at trial. During the February 4, 2015, teleconference, Baskin alleged that Pepsi's Exhibits 39 through 46 were inadmissible in

light of this ruling. On its face, however, Pepsi's exhibit list does not support Baskin's conclusion: these documents are listed as "PMA Full Line Sales Chart," "PMA Full Line Sales Shortages Reports," "PMA Full Line Commission Review," "PMA Full Line Sales Shortages Reports," "PMA Deposit Slip Images," "PMA Spoilage Report," "PMA Product Sales Ranking Report," and "PMA Product Sales Ranking Report." (*See* Docket No. 42 at 2.) Further explanation as to these exhibits may be necessary. However, because the Court perceives no connection between the title of these documents and Baskin's characterization of them, they will not be excluded at this time.

    **II.    The Court will sustain Baskin's objections to Pepsi's designation of deposition testimony for use at trial.**

Although Baskin initially objected to Pepsi's designation of the depositions of three witnesses, (*see* Docket No. 50), Pepsi indicated during this week's teleconference that it planned to use the deposition of only John Spear. Pepsi then withdrew its designation of the two portions of Spear's deposition to which Baskin objected. (Docket No. 77.) However, Baskin now contends that because Spear is available to testify as a witness at trial, none of his deposition should be used. (Docket No. 78.)

    Federal Rule of Civil Procedure 32(a) provides:

(a) Using Depositions.

. . .

(4) Unavailable Witness. A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds:

    (A) that the witness is dead;

    (B) that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition;

    (C) that the witness cannot attend or testify because of age, illness, infirmity, or imprisonment;

    (D) that the party offering the deposition could not procure the witness's attendance by subpoena; or

> (E) on motion and notice, that exceptional circumstances make it desirable—in the interest of justice and with due regard to the importance of live testimony in open court—to permit the deposition to be used.

"The party seeking to admit a deposition at trial must prove that the requirements of Rule 32(a) have been met." *Allgeier v. United States*, 909 F.2d 869, 876 (6th Cir. 1990). What is more, "the federal rules have not changed the long-established principle that testimony by deposition is less desirable than oral testimony and should ordinarily be used as a substitute only if the witness is not available to testify in person. . . . Although the increasing availability and fidelity of videotaped depositions has provided a better alternative than reading a written transcription, the preference for live testimony is still endorsed by the federal courts." 8A *Federal Practice and Procedure*, Charles A. Wright, Arthur R. Miller, Richard L. Marcus, § 2142 (2d ed. 1994) (footnotes omitted).

Pepsi has not established that Spear is unavailable under any of the criteria set forth above, nor has the company asserted that "exceptional circumstances" justify the use of his deposition testimony at trial. The Court perceives no extreme hardship that would prevent Spear—who lives and works in McCracken County, Kentucky—from testifying in person. Accordingly, Baskin's objection to the use of Spear's testimony is hereby sustained.

### Conclusion and Order

Having considered the parties' arguments, for the reasons set forth above, the Court will overrule Plaintiff Arthur Baskin's objections to the exhibit list of Defendant Pepsi MidAmerica Co. (Docket No. 51.) The Court will sustain Baskin's objection to Pepsi's designation of deposition testimony for use at trial. (Docket No. 50.) Finally, the Court understands that Baskin's objections raised in Docket No. 52 concern witnesses whom Pepsi will not call at trial; accordingly, these objections are moot.

cc: Counsel